UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

CHRISTIEN D. MARTIN,

                    Plaintiff,                    Case No. 1:24-cv-174

v.                                               Honorable Phillip J. Green

MICHIGAN DEPARTMENT OF
CORRECTIONS, et al.,

                    Defendants.
_____/

## **OPINION**

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis* in a separate order.  Pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure, Plaintiff consented to proceed in all matters in this action under the jurisdiction of a United States Magistrate Judge. (ECF No. 8, PageID.120.)

This case is presently before the Court for preliminary review under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).  The Court is required to conduct this initial review prior to the service of the complaint.  *See In re Prison Litig. Reform Act*, 105 F.3d 1131, 1131, 1134 (6th Cir. 1997); *McGore v. Wrigglesworth*, 114 F.3d 601, 604–05 (6th Cir. 1997).  Service of the complaint on the named defendants is of particular significance in defining a putative defendant's relationship to the proceedings.

"An individual or entity named as a defendant is not obliged to engage in litigation unless notified of the action, and brought under a court's authority, by formal process." *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347 (1999). "Service of process, under longstanding tradition in our system of justice, is fundamental to any procedural imposition on a named defendant." *Id.* at 350. "[O]ne becomes a party officially, and is required to take action in that capacity, only upon service of a summons or other authority-asserting measure stating the time within which the party served must appear and defend." *Id.* (citations omitted). That is, "[u]nless a named defendant agrees to waive service, the summons continues to function as the *sine qua non* directing an individual or entity to participate in a civil action or forgo procedural or substantive rights." *Id.* at 351. Therefore, the PLRA, by requiring courts to review and even resolve a plaintiff's claims before service, creates a circumstance where there may only be one party to the proceeding the plaintiff at the district court level and on appeal. *See, e.g.*, *Conway v. Fayette Cnty. Gov't*, 212 F. App'x 418 (6th Cir. 2007) ("Pursuant to 28 U.S.C. § 1915A, the district court screened the complaint and dismissed it without prejudice before service was made upon any of the defendants . . . [such that] . . . only [the plaintiff] [wa]s a party to this appeal.").

Here, Plaintiff has consented to a United States Magistrate Judge conducting all proceedings in this case under 28 U.S.C. § 636(c). That statute provides that "[u]pon the consent of the parties, a full-time United States magistrate judge . . . may conduct any or all proceedings . . . and order the entry of judgment in the case . . . ."

28 U.S.C. § 636(c).  Because the named Defendants have not yet been served, the undersigned concludes that they are not presently parties whose consent is required to permit the undersigned to conduct a preliminary review under the PLRA, in the same way they are not parties who will be served with or given notice of this opinion. *See Neals v. Norwood*, 59 F.3d 530, 532 (5th Cir. 1995) ("The record does not contain a consent from the defendants[; h]owever, because they had not been served, they were not parties to this action at the time the magistrate entered judgment.").[1]

Under the PLRA, the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief.  28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c).  The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible.  *Denton v. Hernandez*, 504 U.S. 25, 33 (1992).  Applying these standards, the Court will dismiss Plaintiff's amended complaint for failure to state a claim.

---

[1] *But see Coleman v. Lab. & Indus. Rev. Comm'n of Wis.*, 860 F.3d 461, 471 (7th Cir. 2017) (concluding that, when determining which parties are required to consent to proceed before a United States Magistrate Judge under 28 U.S.C. § 636(c), "context matters" and the context the United States Supreme Court considered in *Murphy Bros.* was nothing like the context of a screening dismissal pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c)); *Williams v. King*, 875 F.3d 500, 503–04 (9th Cir. 2017) (relying on Black's Law Dictionary for the definition of "parties" and not addressing *Murphy Bros.*); *Burton v. Schamp*, 25 F.4th 198, 207 n.26 (3d Cir. 2022) (premising its discussion of "the term 'parties' solely in relation to its meaning in Section 636(c)(1), and . . . not tak[ing] an opinion on the meaning of 'parties' in other contexts").

**Discussion**

I.      **Relevant Procedural History and Factual Allegations**

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Ionia Correctional Facility (ICF) in Ionia, Ionia County, Michigan.  The events about which he complains occurred at various correctional facilities where Plaintiff has been housed over the past ten years, including ICF, the Saginaw County Correctional Facility (SRF) in Freeland, Saginaw County, Michigan; the Muskegon Correctional Facility (MCF) in Muskegon, Muskegon County, Michigan; the Chippewa Correctional Facility (URF) in Kincheloe, Chippewa County, Michigan; the Charles Egeler Reception & Guidance Center (RGC) in Jackson, Jackson County, Michigan; the Kinross Correctional Facility (KCF) in Kincheloe, Chippewa County, Michigan; and the Bellamy Creek Correctional Facility (IBC) in Ionia, Ionia County, Michigan.

In Plaintiff's original complaint, he sued the MDOC, SRF, and the St. Louis Correctional Facility (SLF), as well as the following individuals: Governor Gretchen Whitmer; MDOC Director Heidi Washington; Warden John Christiansen; Correctional Officer (CO) Unknown Russo; CO Unknown MacDonald; CO Unknown Barnett; Prison Counselor (PC) Unknown Watters; CO Unknown Sweet; CO Unknown Christiansen; CO Unknown Long; Lieutenant Unknown Lynch; CO Unknown Boleski; Parole Board Member Timothy S. Flanagan; Parole Board Member Adrianne K. Van Langevelde; CO Unknown Moreno; CO Unknown Cane; CO Unknown Hoover; Unknown Part(y)(ies) #1, named as every CO dating back to 2014 "that has ever[] written [Plaintiff] a ticket"; Unknown Part(y)(ies) #2, named as

4

every PC or Assistant Resident Unit Specialist "that had possession of [Plaintiff's] prison file"; Unknown Part(y)(ies) #3, named as "each Warden and Deputy Warden and staff at each facility [Plaintiff has] attended"; Unknown Part(y)(ies) #4, named as "all grievance coordinators that ha[ve] ever[] denied a grievance [Plaintiff has] written"; Unknown Part(y)(ies) #5, named as "all sergeants and lieutenants" involved in Plaintiff's tickets; Unknown Part(y)(ies) #6, named as "all Hearing Investigators that ha[d] a video hearing or in person hearing on each ticket"; Unknown Part(y)(ies) #7, named as "the correctional facilities administration"; Unknown Part(y)(ies) #8, named as "every inspector at every [MDOC] facility"; Unknown Part(y)(ies) #9, named as "every security officer or any staff in charge of head of security"; Unknown Part(y)(ies) #10, named as "all classification officers at every facility [Plaintiff] has attended"; Unknown Part(y)(ies) #11, named as all security classification members "at every facility [Plaintiff has] attended"; Unknown Part(y)(ies) #12, named as "medical [as] a whole[, including] all physicians and nurses and the company over them at each facility [Plaintiff has] attended"; Unknown Part(y)(ies) #13, named as "the Parole Board"; Unknown Part(y)(ies) #14, named as "Legislative Corrections Ombudsman"; Unknown Part(y)(ies) #15, named as all Deputy Wardens "at each facility [Plaintiff has] attended . . . in the past ten years"; Unknown Part(y)(ies) #16, named as all Assistant Deputy Wardens "at each facility [Plaintiff has] attended . . . in the past ten years"; Unknown Part(y)(ies) #17, named as all Captains "at each facility [Plaintiff has] attended . . . in the past ten years"; Unknown Part(y)(ies) #18, named as all Health Unit Managers "at every facility in the [MDOC]"; Unknown

Part(y)(ies) #19, named as all Resident Unit Managers "at every facility in the [MDOC]"; Unknown Part(y)(ies) #20, named as "all Housing Unit Administration Staff at every facility in the [MDOC]"; Unknown Part(y)(ies) #21, named as "every member in control of surveillance at every facility in the [MDOC]"; Unknown Part(y)(ies) #22, named as "every surveillance company that installed cameras in or on every [MDOC facility]"; Unknown Part(y)(ies) #23, named as "all staff" SRF; and Unknown Part(y)(ies) #24, named as "all staff that works there now" at SLF.[2] (Compl., ECF No. 1, PageID.1–9.)

Upon review of Plaintiff's complaint, the Court concluded that the complaint failed to comply with Rule 8 of the Federal Rules of Civil Procedure and the Federal Rules of Civil Procedure regarding the proper joinder of parties and claims.  (*See* Order, ECF No. 6 (citing, among other things, Fed. R. Civ. P. 8, 18(a), 20(a)(2)).)  In an Order entered on April 15, 2024, the Court explained that pursuant to Rule 8 of the Federal Rules of Civil Procedure, a "pleading that states a claim for relief must contain," among other things, "*a short and plain statement* of the claim showing that the pleader is entitled to relief."  (*Id.*, PageID.96 (emphasis added in Order) (quoting Fed. R. Civ. P. 8(a)(2)).)  The Court further explained that "[i]t is a basic pleading essential that a plaintiff attribute factual allegations to particular defendants," and any "[s]ummary reference to a single, five-headed 'Defendants' [or staff] does not support a reasonable inference that each Defendant is liable . . . ." (*Id.* (quoting *Bell*

---

[2] In this opinion, the Court corrects the capitalization, spelling, and punctuation in quotations from Plaintiff's filings.

*Atl. Corp. v. Twombly*, 550 U.S. 544, 555–61 (2007); *Boxill v. O'Grady*, 935 F.3d 510, 518 (6th Cir. 2019); and citing *Gilmore v. Corr. Corp. of Am.*, 92 F. App'x 188, 190 (6th Cir. 2004)).)  The Court advised Plaintiff that in its current form, his "sprawling complaint against the above-listed Defendants fail[ed] to satisfy the requirements of Rule 8 of the Federal Rules of Civil Procedure." (*Id.*)  The Court also advised Plaintiff that his "complaint fail[ed] to comply with the Federal Rules of Civil Procedure regarding the proper joinder of parties and claims," explaining that "a civil plaintiff may not name more than one defendant in his original or amended complaint unless one claim against each additional defendant is transactionally related to the claim against the first defendant and involves a common question of law or fact." (*Id.*, PageID.97 (quoting *Proctor v. Applegate*, 661 F. Supp. 2d 743, 778 (E.D. Mich. 2009); and citing Fed. R. Civ. P. 18(a), 20(a)(2)).)  Additionally, the Court advised Plaintiff "that the statute of limitations for civil rights suits filed in Michigan under § 1983 is three years." (*Id.*, PageID.97 n.1 (citations omitted).)

Despite the above-discussed deficiencies, rather than dismiss the action, in deference to Plaintiff's *pro se* status, the Court provided Plaintiff with an opportunity to correct the deficiencies of his original complaint by filing an amended complaint within twenty-one days. (*See id.*, PageID.97–98.)  The Court warned Plaintiff that failure "to submit an amended complaint that complie[d] with th[e] Order and the applicable Federal Rules of Civil Procedure regarding pleading standards and joinder" within the noted twenty-one day response period would lead to the dismissal

of the action without prejudice pursuant to Rule 41(b) of the Federal Rules of Civil Procedure.  (*Id.*, PageID.98.)

In response, Plaintiff filed an amended complaint that wholly fails to comply with the Federal Rules of Civil Procedure and the Court's instructions in its April 15, 2024, Order.  (Am. Compl., ECF No. 8.)  Thereafter, Plaintiff filed two supplements to his amended complaint, both which also fail to comply with the Federal Rules of Civil Procedure.  (First Suppl., ECF No. 10; Second Suppl., ECF No. 11.)

In Plaintiff's amended complaint, he sues the MDOC; URF CO Unknown Russo; IBC CO Unknown Donahue; URF CO Unknown Goings; Unknown Parties #1, named as SRF, the facility as a whole and the "warden and staff working [the] unit Plaintiff was in [at the] time of assault"; Unknown Parties #2, named as MCF, the facility as a whole and "all staff [who] wrote Plaintiff tickets or harassed and all staff on facility," not including the "property woman"; Unknown Parties #3, named as URF, the facility as a whole and the "warden and deputy wardens when Plaintiff attended while harassment happened and attacks in each unit"; Unknown Parties #4, named as RGC, and the warden and assistant deputy wardens at the "time of assault" and "intake for prisoners (quarantine)"; Unknown Parties #5, named as KCF, "new Kinross," the "warden and staff [at the] time of assault," and "old intake for ride-in and ride-outs"; Unknown Parties #6, named as all staff at MCF, including the "warden, COs, [assistant deputy wardens], coordinators, [and] sergeants"; and Unknown Parties #7, named as all staff at IBC, including "all wardens, COs,

8

[assistant deputy wardens], captains, sergeants, and staff." (Am. Compl., ECF No. 8, PageID.102–104.)

In the amended complaint, Plaintiff alleges that "since day one of incarceration, [he] ha[s] been getting assaulted and abused by staff even in Jackson intake where [he] lost [his] first tooth from getting hit with a lock walking through the chow line at quarantine that staff sent at [Plaintiff, and] knocked [his] tooth out." (*Id.*, PageID.105 (grammar in original retained).) Plaintiff states that he has "been stabbed numerous times, basically a walking punching bag." (*Id.*) Plaintiff "asked each assailant . . . who sent you," and "they all stated the COs and staff." (*Id.*) Plaintiff "had an assault happen at [SRF] with a lock," and on his first day at KCF, "8 prisoners jumped [him] on [the] big yard." (*Id.*) Plaintiff states that "the frivolous actions of staff is sad to the responsibility of health and trust of the [MDOC] even knowing they are willing to deny Plaintiff medical care and times where Plaintiff tried to report incidents," and "staff would notify the prisoners that he tried to get help or handle the matter in a more civilized way without harm to prevent either party from trouble or harm." (*Id.*, PageID.106 (grammar in original retained).) Plaintiff claims that "staff has set it up to take every television [he] ever had," and "they have stolen every pair of shoes [he has] ordered" by "purposely letting prisoners in [Plaintiff's] cell to take [Plaintiff's] belongings." (*Id.*, PageID.107.) Plaintiff also claims they have "attacked the women in [his] life" (*id.*), and "COs are still putting hits on Plaintiff, even murder for hire." (*Id.*, PageID.108.)

Plaintiff alleges that on October 6, 2023, at IBC, non-party Nurse Kelley drew Plaintiff's blood "for a schedule[d] HIV test," and the result came back "non-reactive" (i.e., negative).  (*Id.*)  Plaintiff claims that ever since that date, "Plaintiff has been having health issues and the []MDOC[] is not letting Plaintiff know what they did to him." (*Id.*)  Plaintiff "believe[s] [that] Nurse Kelley . . . was paid to use a dirty needle on Plaintiff" and was "order[ed] to do so by [Defendant] Donahue" and non-party CO Wickwire.  (*Id.*)  Plaintiff claims that the porters were paid to put "unknown substance[s]" in his food trays, and "the last almost person [Donahue] paid was a vice lord name[d] Amir locked on upstair[s] wing sent a hit by [Defendant] Donahue by Trey Billy the blood with glasses to give Plaintiff HIV or drug him and all these prisoners that w[ere] involved [non-party CO] Wickwire has rode them out to other prisons."  (*Id.*, PageID.109 (grammar in original retained).)  Plaintiff contends that non-party CO Wickwire went to Plaintiff's cell in March of an unspecified year "to menace HIV in Plaintiff because she has it and wanted to date Plaintiff because [Defendant] Donahue wanted to be with Plaintiff's child's mother, Brittany Vaughn, and Plaintiff was told they even got married."  (*Id.*)  Plaintiff believes that Ms. Vaughn "is pregnant with [Defendant] Donahue's child." (*Id.*, PageID.110.)  Plaintiff states that "the hurt and pain and all the lies and humiliation is unreal and insane." (*Id.*)  Plaintiff claims that "staff even told Plaintiff [that Defendant] Donahue has killed Plaintiff's son . . . that he has by Brittany Vaughn," and that "they ha[ve] a home in Texas."  (*Id.*)

10

Plaintiff next alleges that he "was at [URF] for years getting harassed day in and day out by [Defendant] Russo," and "for years and years," "he would write tickets on Plaintiff and order other COs to write tickets on Plaintiff so his name wouldn't be on all the tickets." (*Id.*, PageID.111.)  Plaintiff claims that he has "done years of toplock at URF and couldn't even use the bathroom" because "[Defendant] Russo would sit at the top of the steps by the bathroom and watch Plaintiff and harass him [and] sometimes wouldn't let Plaintiff use the bathroom for hours at a time." (*Id.*) Plaintiff alleges that "just in Neebish Unit alone at [URF], the plaintiff has received over 75 tickets in a short period of time." (*Id.*, PageID.112.)

Without providing any further explanation, Plaintiff claims that Defendant Russo "would never do this to white prisoners," stating that Plaintiff "is a non-white male and never gotten in a fight in that unit . . . or gotten in any trouble besides the harassment of staff." (*Id.*)  Plaintiff further claims that Defendant Russo "always used derogatory language and was always demeaning, yelling and screaming at Plaintiff racist comments and also humiliating comments." (*Id.*)  Plaintiff contends that "every ticket he wrote he would threaten to write more tickets and made promises that when he wasn't there he would have other staff make [Plaintiff] a target." (*Id.*)

Further, Plaintiff alleges that he "went years [and] couldn't go to yard or call [his] children for holidays and birthdays even on [his] own birthday," and "it made [him] sad as a father." (*Id.*, PageID.111.)

Plaintiff states that "these actions [have] followed Plaintiff unit to unit, facility to facility, year after year, and day after day." (*Id.*, PageID.113.) Plaintiff claims "they would also retaliate if Plaintiff wrote a grievance on any of the staff." (*Id.*) Plaintiff also claims "these actions are still being carried out on to this day." (*Id.*, PageID.114.)

Plaintiff alleges that "COs are committing felonies while at work and getting away with it every day." (*Id.*, PageID.116.) Plaintiff claims that "staff has br[ought] drugs in, got caught, [and] still kep[t] their jobs," and are "even committing homicides and also murder for hire and not get[ting] punished for it." (*Id.*) Plaintiff also claims "they bring in cell phones and do money transfers with prisoners and commit money laund[ering] and racketeering and other felony crimes," such as "larceny, stalking, harassment, and even hurt[ing] prisoners' families." (*Id.*) Plaintiff contends that "most injuries to prisoners are caused by the actions of the staff and the mind control they have over the prisoners and Plaintiff." (*Id.*, PageID.117.)

Plaintiff states that "supervisory personnel assisted in most of these acts and participated also this is the only way to join all parties together and the only correct way to do it without losing understanding of the merit and facts." (*Id.*, PageID.118 (grammar in original retained).) Plaintiff further states that "it's hard to break down the conduct of so many individuals being involved so pinpointing only one is impossible." (*Id.*) Plaintiff states "the entire history of the problems is still an ongoing issue and Plaintiff is satisfied with only collecting damages for the past three years . . . but the enforcement of the staff and the change of conduct and motivational

help with staff and prisoners can be impl[ement]ed for a better environment." (*Id.*, PageID.119 (grammar in original retained).)

In Plaintiff's first supplement, he sets forth facts regarding events during his incarceration at ICF. (*See* First Suppl., ECF No. 10.) Plaintiff states that on May 9, 2024, "a fire was started by [a] prisoner in the cell above Plaintiff," and smoke went through the ventilation system into Plaintiff's cell. (*Id.*, PageID.134.) "Plaintiff is an asthmatic and almost lost his life because of the smoke." (*Id.*) Additionally, Plaintiff claims that "they are not accommodating [his] food detail . . . while in segregation," explaining that he has an allergy to the "fish tray and tomatoes tray." (*Id.*) Plaintiff states that "other prisoners in segregation are getting their special diet trays every day." (*Id.*)

Plaintiff also claims that staff know about the status of his court proceedings "when [he] doesn't even have any knowledge of the status of his civil rights complaint." (*Id.*, PageID.136.) Plaintiff believes that "staff is reading [his] mail and releasing information to staff and prisoners." (*Id.*) Further, Plaintiff states that he has only received one shower during an approximately sixteen-day period. (*Id.*) Plaintiff also references his belief that his was given HIV and that "unknown drugs" have been put in his food. (*Id.*, PageID.137, 138.)

In Plaintiff's second supplement, he again discusses the fires started by other prisoners at ICF.[3] (Second Suppl., ECF No. 11, PageID.145.) Plaintiff states that

---

[3] In the second supplement, Plaintiff requests to add IBC CO Unknown Nelson as a Defendant, alleging that on April 20, 2024, "after [an] encounter with [Defendant] Donahue at [IBC,] . . . CO Nelson at the interior door entrance at base while putting

"the COs are not doing their jobs following protocol for fire evacuation leaving prisoners in cells with the smoke to die purposely trying to cause death to prisoners." (*Id.* (grammar in original retained).)   Plaintiff also states that "most prisoners in segregation can't use the phone or contact their family to inform them of problems at hand by facility actions causing [a] hostile environment."  (*Id.* (grammar in original retained).)

Additionally, Plaintiff again references his belief that he has HIV, stating: "I'm pressing charg[es] on every CO that had something to do with giving me HIV; I was perfectly healthy 3 months ago [and] now feel like I'm dying."  (*Id.*, PageID.146; *see id.*, PageID.148 (reiterating Plaintiff's belief that Defendant Donahue and non-parties CO Wickwire and Nurse Kelley "menace[d] HIV in [his] body").)   Further, Plaintiff states that he does not "feel safe in Ionia County" and that "this is all retaliation."  (*Id.*, PageID.146.)

---

Plaintiff in handcuffs, the COs w[ere] beating Plaintiff up while in restraints and CO Nelson administered some kind of other chemical in Plaintiff's buttocks." (Second Suppl., ECF No. 11, PageID.151 (grammar in original retained).) Plaintiff states that "this is the second time they administered a chemical in [his] body and [he has] no idea of what it is; [he] believe[s] [it is] another dose of the disease HIV." (*Id.*) Upon review of Plaintiff's request to add CO Nelson as a Defendant, this request is denied as futile and improper because Plaintiff fails to show that the event involving CO Nelson would be properly joined to this action. Although Plaintiff references an encounter with Defendant Donahue preceding the event with CO Nelson, Plaintiff alleges no facts showing that Defendant Donahue was involved in Plaintiff being put in handcuffs, beaten by unnamed persons, and given the injection by CO Nelson. Therefore, Plaintiff fails to show that the event with CO Nelson arises out of the same transactions or occurrences as the claims against Defendant Donahue or any of the other Defendants in the amended complaint. *See* Fed. R. Civ. P. 20(a)(2); *see also* Fed. R. Civ. P. 21. Under these circumstances, the Court will deny Plaintiff's request to add CO Nelson as a Defendant.

Plaintiff claims that he has not seen any of his five children during his eleven-year incarceration, and that he has "been dealing with abuse since the day [he] stepped into prison." (*Id.*, PageID.147.)  Plaintiff also claims that "staff has lied on [him] to the parole board; they purposely boost [his] points so they are high," and after he filed action no. 2:18-cv-173 in this Court, "it started just [as] abuse and harassment," and "now it's turning to a murder or homicide on [him] by staff because of lies and jealousy and because they don't want [him] to go home." (*Id.*)  Further, Plaintiff claims:

> They are trying to have [him] go to yard and start a fight so they can have the gun tower use [a] rifle to shoot [him] like . . . CO Donahue paid [a] CO to do at Michigan Reformatory . . . before it close[d] causing a gang fight with payment of drugs so they can get a shot off to the prisoner that is a target because of staff's actions.

(*Id.*, PageID.150 (grammar in original retained).)

As relief, in the amended complaint, Plaintiff seeks compensatory and punitive damages, as well as "safety of Plaintiff and children and family from staff of [MDOC]." (Am. Compl., ECF No. 8, PageID.120.)

## II.    Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).  While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions.  *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*,

550 U.S. at 570.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679.  Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556).  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law.  *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed.  *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A.     Failure to Comply With the Federal Rules of Civil Procedure

As detailed above, Plaintiff's amended complaint and supplements fail to comply with the Federal Rules of Civil Procedure and the Court's instructions in its April 15, 2024, Order.  (Am. Compl., ECF No. 8; Suppl., ECF No. 10); *see supra* Part I.  Specifically, Plaintiff's sprawling and wide-reaching amended complaint and

16

supplements cover events that occurred over the past ten years at various correctional facilities where Plaintiff was incarcerated and name the correctional facilities and, essentially, all staff at these facilities as Defendants, failing to comply with the pleading standards set forth in Federal Rule of Civil Procedure 8.  In addition to failing to comply with Rule 8 of the Federal Rules of Civil Procedure, Plaintiff fails to comply with the Federal Rules of Civil Procedure regarding joinder because the amended complaint and supplements describe separate events at different correctional facilities involving different Defendants, which do not arise from the same transaction or occurrence.  Under these circumstances, Plaintiff has wholly failed to comply with the Federal Rules of Civil Procedure.  For that reason alone, this action can be dismissed.[4]

Moreover, even setting aside Plaintiff's failure to comply with the Federal Rules of Civil Procedure, for the reasons set forth below, he fails to state any claim upon which relief may be granted.

### B.    Defendant MDOC

Plaintiff names the MDOC as a Defendant in this action.  (Am. Compl., ECF No. 8, PageID.102.)  However, Plaintiff may not maintain a § 1983 action against the MDOC.  Regardless of the form of relief requested, the states and their departments

---

[4] Additionally, although Plaintiff does not provide many dates in his amended complaint, given that his claims span an approximately ten-year period, many of Plaintiff's claims would also be barred by three-year statute of limitations for § 1983 claims in Michigan. *See* Mich. Comp. Laws § 600.5805(2); *Carroll v. Wilkerson*, 782 F.2d 44, 44 (6th Cir. 1986) (per curiam); *Stafford v. Vaughn*, No. 97-2239, 1999 WL 96990, at *1 (6th Cir. Feb. 2, 1999).

are immune under the Eleventh Amendment from suit in the federal courts, unless the state has waived immunity or Congress has expressly abrogated Eleventh Amendment immunity by statute. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98–101 (1984); *Alabama v. Pugh*, 438 U.S. 781, 782 (1978); *O'Hara v. Wigginton*, 24 F.3d 823, 826 (6th Cir. 1994). Congress has not expressly abrogated Eleventh Amendment immunity by statute, *Quern v. Jordan*, 440 U.S. 332, 341 (1979), and the State of Michigan has not consented to civil rights suits in federal court. *Abick v. Michigan*, 803 F.2d 874, 877 (6th Cir. 1986). In numerous opinions, the United States Court of Appeals for the Sixth Circuit has specifically held that the MDOC is absolutely immune from a § 1983 suit under the Eleventh Amendment. *See*, *e.g.*, *Harrison v. Michigan*, 722 F.3d 768, 771 (6th Cir. 2013); *Diaz v. Mich. Dep't of Corr.*, 703 F.3d 956, 962 (6th Cir. 2013); *McCoy v. Michigan*, 369 F. App'x 646, 653–54 (6th Cir. 2010). Therefore, Plaintiff's claims against the MDOC are properly dismissed on grounds of immunity.

Moreover, the State of Michigan (acting through the MDOC) is not a "person" who may be sued under § 1983 for money damages. *See Lapides v. Bd. of Regents*, 535 U.S. 613, 617 (2002) (citing *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 66 (1989)); *Harrison*, 722 F.3d at 771. And, regardless, Plaintiff's claims against the MDOC fall far short of the minimal pleading standards under Rule 8 of the Federal Rules of Civil Procedure. Fed. R. Civ. P. 8(a)(2). For these reasons, Plaintiff's claims against the MDOC are also properly dismissed for failure to state a claim under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).

**C.**     **Defendants Goings and Unknown Parties #1, #2, #3, #4, #5, #6, and #7**

As to Defendants Goings and Unknown Parties #1, #2, #3, #4, #5, #6, and #7, Plaintiff fails to allege sufficient facts showing how these Defendants were personally involved in the violation of his constitutional rights.  (*See generally* Am. Compl., ECF No. 8.)  Specifically, when listing the Defendants named in this action, Plaintiff lists these Defendants, however, Plaintiff fails to name Defendants Goings and Unknown Parties #1, #2, #3, #4, #5, #6, and #7 when setting forth his factual allegations.  (*See generally id.*)  Where a person is named as a defendant without an allegation of specific conduct, the complaint is subject to dismissal, even under the liberal construction afforded to *pro se* complaints.  *See Gilmore v. Corr. Corp. of Am.*, 92 F. App'x 188, 190 (6th Cir. 2004); *Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002) (dismissing plaintiff's claims where the complaint did not allege with any degree of specificity which of the named defendants were personally involved in or responsible for each alleged violation of rights).  Although Plaintiff refers to "staff" and "they" throughout the amended complaint, "[s]ummary reference to a single, five-headed 'Defendants' [or staff] does not support a reasonable inference that each Defendant is liable . . . ." *Boxill v. O'Grady*, 935 F.3d 510, 518 (6th Cir. 2019) (citation omitted) ("This Court has consistently held that damage claims against government officials arising from alleged violations of constitutional rights must allege, with particularity, facts that demonstrate what each defendant did to violate the asserted constitutional right." (quoting *Lanman v. Hinson*, 529 F.3d 673, 684 (6th Cir. 2008))).  Thus, Plaintiff's claims against Defendants Goings and Unknown Parties #1, #2, #3,

#4, #5, #6, and #7 fall far short of the minimal pleading standards under Rule 8 of the Federal Rules of Civil Procedure and are subject to dismissal.  Fed. R. Civ. P. 8(a)(2) (requiring "a short and plain statement of the claim showing that the pleader is entitled to relief").

Accordingly, for these reasons, Plaintiff's claims against Defendants Goings and Unknown Parties #1, #2, #3, #4, #5, #6, and #7 will be dismissed.

### D.    Defendants Donahue and Russo

Defendants Donahue and Russo are the only individual Defendants named in the body of Plaintiff's amended complaint and supplements.  The Court addresses Plaintiff's claims against these Defendants in turn.

### 1.    Defendant Donahue

Plaintiff's allegations against Defendant Donahue are as follows: Plaintiff first alleges that on October 6, 2023, at IBC, non-party Nurse Kelley drew Plaintiff's blood "for a schedule[d] HIV test," and the result came back "non-reactive" (i.e., negative). (Am. Compl., ECF No. 8, PageID.108.)  Plaintiff "believe[s] [that] Nurse Kelley . . . was paid to use a dirty needle on Plaintiff" and was "order[ed] to do so by [Defendant] Donahue" and non-party CO Wickwire.  (*Id.*)  Plaintiff claims that "the last almost person [Donahue] paid was a vice lord named Amir locked on upstair[s] wing sent a hit by [Defendant] Donahue by Trey Billy the blood with glasses to give Plaintiff HIV or drug him and all these prisoners that was involved [non-party] Wickwire has rode them out to other prisons."   (*Id.*, PageID.109 (grammar in original retained).) Plaintiff next alleges that his child's mother "is pregnant with [Defendant] Donahue's child."  (*Id.*, PageID.110.)  Plaintiff states that "the hurt and pain and all the lies and

humiliation is unreal and insane." (*Id.*)  Plaintiff claims that "staff even told Plaintiff [that] [Defendant] Donahue has killed Plaintiff's son . . . that he has by Brittany Vaughn," and that "they ha[ve] a home in Texas." (*Id.*)  Additionally, in the second supplement, Plaintiff alleges that "they are trying to have [him] go to yard and start a fight so they can have the gun tower use [a] rifle to shoot [him]," which Plaintiff claims is similar to something that occurred previously with Defendant Donahue. (Second Suppl., ECF No. 11, PageID.150.)  For the reasons set forth below, the Court concludes that Plaintiff's claims against Defendant Donahue are frivolous and fail to state a claim.

An action may be dismissed as frivolous if "it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989); *Brown v. Bargery*, 207 F.3d 863, 866 (2000); *Lawler v. Marshall*, 898 F.2d 1196, 1198 (6th Cir. 1990).  Claims that lack an arguable or rational basis in law include claims for which the defendants are clearly entitled to immunity and "claims of infringement of a legal interest which clearly does not exist;" claims that lack an arguable or rational basis in fact describe "fantastic or delusional scenarios." *Neitzk*e, 490 U.S. at 327–28; *Lawler*, 898 F.2d at 1199.  An *in forma pauperis* complaint may not be dismissed, however, merely because the court believes that the plaintiff's allegations are unlikely. *Neitzk*e, 490 U.S. at 328.

In this case, the Court is unable to discern the claims against Defendant Donahue in Plaintiff's amended complaint.  Although the amended complaint itself is legible, the allegations against Defendant Donahue do not form coherent claims.

Because the Court is unable to decipher Plaintiff's rambling statements and allegations against Defendant Donahue in the amended complaint, his amended complaint necessarily lacks an arguable basis either in law or fact. *See id.* at 325; *see also Parker v. Parker Int'l/Parker Tobacco Co.*, No. 89-6078, 1990 WL 63523, at *1 (6th Cir. May 11, 1990). Even giving the most liberal construction to Plaintiff's amended complaint, *see Haines*, 404 U.S. at 520, the Court is unable to find that a cause of action has been alleged against Defendant Donahue.

Moreover, turning to the merits of Plaintiff's claims against Defendant Donahue, it appears that Plaintiff mistakenly believes that the October 2023 HIV test showed that he was positive for HIV. The majority of Plaintiff's allegations against Defendant Donahue relate to Plaintiff's belief that Defendant Donahue was involved in "giv[ing] Plaintiff HIV," however, Plaintiff's own allegations show that his October 2023 HIV test was negative. Under these circumstances, the Court fails to discern how Plaintiff states any claim of constitutional dimension against Defendant Donahue regarding Plaintiff's negative HIV-status. Likewise, the Court fails to discern any claim of constitutional dimension regarding Plaintiff's allegation that Plaintiff's child's mother is pregnant by Defendant Donahue. As to Plaintiff's allegation that Defendant Donahue may have killed Plaintiff's child, if true, that would be a criminal matter and would not be a proper claim in the present civil rights action. *See Diamond v. Charles*, 476 U.S. 54, 64–65 (1986); *Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973); *Martin v. Koljonen*, No. 03-2169, 2004 WL 445720, at *1 (6th Cir. Mar. 9, 2004).

Further, in Plaintiff's second supplement, he alleges in a vague and conclusory manner that:

> they are trying to have [him] go to yard and start a fight so they can have the gun tower use [a] rifle to shoot [him] like . . . CO Donahue paid [a] CO to do at Michigan Reformatory . . . before it close[d] causing a gang fight with payment of drugs so they can get a shot off to the prisoner that is a target because of staff's actions.

(Second Suppl., ECF No. 11, PageID.150 (grammar in original retained).)  As an initial matter, although Plaintiff's allegations are not a model of clarity, it appears that Plaintiff is using Defendant Donahue's alleged prior action as an example of something that happened to another prisoner and which *could* happen to Plaintiff, rather than alleging that Defendant Donahue took this action against him.  Plaintiff may only represent himself with respect to his individual claims and may not act on behalf of other prisoners.  *See O'Malley v. Brierley*, 477 F.2d 785 (3d Cir. 1973); *Lutz v. LaVelle*, 809 F. Supp. 323, 325 (M.D. Pa. 1991); *Snead v. Kirkland*, 462 F. Supp. 914, 918 (E.D. Pa. 1978).  Additionally, Plaintiff provides no further facts in support of this conclusory assertion, and, therefore, he fails to show that this claim regarding Defendant Donahue's alleged action is timely or to explain what specific actions Defendant Donahue took to effect this alleged ruse to take a shot at a prisoner.  Such "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to state a claim.  *Iqbal*, 556 U.S. 662, 678 (2009).

Accordingly, for these reasons, Plaintiff fails to state a claim against Defendant Donahue, and Plaintiff's claims against Defendant Donahue will be dismissed.

### 2.     Defendant Russo

As to Defendant Russo, Plaintiff's only allegations are as follows: Plaintiff first alleges that "Plaintiff was at [URF] for years getting harassed day in and day out by [Defendant] Russo," and "for years and years," "[Russo] would write tickets on Plaintiff and order other COs to write tickets on Plaintiff so his name wouldn't be on all the tickets." (Am. Compl., ECF No. 1, PageID.111.)  Plaintiff next alleges that he has "done years of toplock at URF and couldn't even use the bathroom" because "[Defendant] Russo would sit at the top of the steps by the bathroom and watch Plaintiff and harass him [and] sometimes wouldn't let Plaintiff use the bathroom for hours at a time." (*Id.*)  Plaintiff further alleges that Defendant Russo "always used derogatory language and was always demeaning, yelling and screaming at Plaintiff racist comments and also humiliating comments." (*Id.*, PageID.112.)  Plaintiff contends that "every ticket he[, apparently, Russo,] wrote he would threaten to write more tickets and made promises that when he wasn't there he would have other staff make [Plaintiff] a target." (*Id.*)  Finally, without providing any further explanation, Plaintiff alleges that Defendant Russo "would never do this to white prisoners," stating that Plaintiff "is a non-white male and never gotten in a fight in that unit . . . . or gotten in any trouble besides the harassment of staff." (*Id.*)  The Court addresses Plaintiff's claims against Defendant Russo in turn.

a.    **First Amendment Retaliation Claims**

The Court construes Plaintiff's allegations against Defendant Russo to raise a First Amendment retaliation claim.

Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish three elements: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to show that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

Here, Plaintiff's retaliation claim fails at the first step because he fails to allege any facts showing that he engaged in protected conduct prior to any of Defendant Russo's alleged adverse actions. In another part of his amended complaint, where neither Defendant Russo nor URF is discussed, Plaintiff references filing grievances, claiming "they would also retaliate if Plaintiff wrote a grievance on any of the staff"; however, Plaintiff fails to allege any facts about any grievances he wrote during his incarceration at URF where Defendant Russo worked. (Am. Compl., ECF No. 8, PageID.113.)

25

Moreover, even setting this issue aside, because Plaintiff does not provide any facts regarding the dates for the events involving Defendant Russo, Plaintiff necessarily fails to allege any facts showing temporal proximity.  (*See id.*, PageID.111–12.)  Instead, Plaintiff's allegations of retaliation are entirely conclusory, and such "conclusory allegations of retaliatory motive 'unsupported by material facts'" do not state a claim under § 1983.  *Harbin-Bey v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005) (citation omitted); *see Murray v. Unknown Evert*, 84 F. App'x 553, 556 (6th Cir. 2003) (holding that in complaints screened pursuant to 28 U.S.C. § 1915A, "[c]onclusory allegations of retaliatory motive with no concrete and relevant particulars fail to raise a genuine issue of fact for trial" (internal quotation marks omitted)); *Lewis v. Jarvie*, 20 F. App'x 457, 459 (6th Cir. 2001) ("[B]are allegations of malice on the defendants' parts are not enough to establish retaliation claims [that will survive § 1915A screening]." (citing *Crawford-El v. Britton*, 523 U.S. 574, 588 (1998))).

Accordingly, Plaintiff's First Amendment retaliation claims against Defendant Russo will be dismissed.

### b.  Eighth Amendment Claims

The Court also construes Plaintiff's amended complaint to raise Eighth Amendment claims against Defendant Russo.

The Eighth Amendment prohibits the infliction of cruel and unusual punishment against those convicted of crimes.  U.S. Const. amend. VIII.  The Eighth Amendment protects against the denial of the "minimal civilized measure of life's necessities."  *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981); *see also Wilson v. Yaklich*,

26

148 F.3d 596, 600–01 (6th Cir. 1998).   However, the Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted).   Moreover, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987).   "Routine discomfort is 'part of the penalty that criminal offenders pay for their offenses against society.'" *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (quoting *Rhodes*, 452 U.S. at 347).   As a consequence, "extreme deprivations are required to make out a conditions-of-confinement claim." *Id.*

In order for a prisoner to prevail on an Eighth Amendment claim, the prisoner must show that he faced a sufficiently serious risk to his health or safety and that defendants acted with "'deliberate indifference' to inmate health or safety." *Mingus v. Butler*, 591 F.3d 474, 479–80 (6th Cir. 2010) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)); *see also Helling v. McKinney*, 509 U.S. 25, 35 (1993) (applying deliberate indifference standard to conditions of confinement claims).   The deliberate-indifference standard includes both objective and subjective components. *Farmer*, 511 U.S. at 834; *Helling*, 509 U.S. at 35–37.   To satisfy the objective prong, an inmate must show "that he is incarcerated under conditions posing a substantial risk of serious harm." *Farmer*, 511 U.S. at 834.   Under the subjective prong, an official must "know[] of and disregard[] an excessive risk to inmate health or safety." *Id.* at 837.   "[P]rison officials who actually knew of a substantial risk to inmate health

27

or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted."  *Id.* at 844.

Here, Plaintiff claims that he has "done years of toplock at URF and couldn't even use the bathroom" because "[Defendant] Russo would sit at the top of the steps by the bathroom and watch Plaintiff."  (Am. Compl., ECF No. 8, PageID.111.) Plaintiff further claims that Defendant Russo "always used derogatory language and was always demeaning, yelling and screaming at Plaintiff racist comments and also humiliating comments."  (*Id.*, PageID.112.)

"Toplock" is a restriction of the prisoner to his own cell, room, or bunk and bunk area.  *See* MDOC Policy Directive 03.03.105, ¶¶ OOO–QQQ (eff. Apr. 18, 2022). Courts have found that placement in segregation is a routine discomfort that is "part of the penalty that criminal offenders pay for their offenses against society," and, therefore, it follows that placement on toplock, which is a similar, but less restrictive, type of placement, is also a routine discomfort faced by criminal offenders.  *Hudson*, 503 U.S. at 9 (quoting *Rhodes*, 452 U.S. at 347).  Although Plaintiff may have been denied certain privileges as a result of his detention on toplock, he fails to allege any facts showing that he was denied basic human needs and requirements.

Plaintiff alleges in a conclusory manner that he "couldn't even use the bathroom" because "[Defendant] Russo would sit at the top of the steps by the bathroom and watch Plaintiff and harass him [and] sometimes wouldn't let Plaintiff use the bathroom for hours at a time."  (Am. Compl., ECF No. 8, PageID.111.) Plaintiff does not explain how many "hours" he was unable to use the bathroom.

Without facts about the specific duration of this condition of confinement, Plaintiff fails to show that this was more than a temporary inconvenience.  *See Hartsfield v. Vidor*, 199 F.3d 305, 310 (6th Cir. 1999) (holding "that deprivations of fresh water and access to the toilet for a 20–hour period, while harsh, were not cruel and unusual punishment" (citing *Stephens v. Carter Cnty. Jail*, 816 F.2d 682 (6th Cir. 1987))); *Rouse v. Caruso*, No. 06-CV-10961-DT, 2011 WL 918327, at *12 (E.D. Mich. Feb. 18, 2011), *report and recommendation adopted*, No. 06-CV-10961, 2011 WL 893216 (E.D. Mich. Mar. 14, 2011) ("Temporary restrictions on bathroom use, even ones lasting several hours, do not constitute the wanton infliction of pain or exhibit deliberate indifference to a prisoner's health or safety." (citing, *inter alia*, *Abdur–Raheem–X v. McGinnis*, No. 99–1075, 1999 WL 1045069, at *2 (6th Cir. Nov. 12, 1999))).

Allegations about temporary inconveniences, e.g., being deprived of a lower bunk, subjected to a flooded cell, or deprived of a working toilet, do not show that the conditions fell beneath the minimal civilized measure of life's necessities as measured by a contemporary standard of decency.  *Dellis v. Corr. Corp. of Am.*, 257 F.3d 508, 511 (6th Cir. 2001); *see also J.P. v. Taft*, 439 F. Supp. 2d 793, 811 (S.D. Ohio 2006) ("[M]inor inconveniences resulting from the difficulties in administering a large detention facility do not give rise to a constitutional claim." (internal quotation marks omitted)).   Moreover, Plaintiff cannot bring an Eighth Amendment claim for emotional or mental damages because he does not allege a physical injury.  *See* 42 U. S.C. §1997e(e); *see also Hudson*, 503 U.S. at 5.

Furthermore, as to Defendant Russo's alleged verbal harassment, although unprofessional, allegations of verbal harassment or threats by prison officials toward an inmate do not constitute punishment within the meaning of the Eighth Amendment. *See, e.g., Ivey*, 832 F.2d at 954–55. Nor do allegations of verbal harassment rise to the level of unnecessary and wanton infliction of pain proscribed by the Eighth Amendment. *Id.*; *see Johnson v. Dellatifa*, 357 F.3d 539, 546 (6th Cir. 2004) (holding that harassment and verbal abuse do not constitute the type of infliction of pain that the Eighth Amendment prohibits).

Accordingly, for all of the reasons set forth above, Plaintiff fails to state an Eighth Amendment claim against Defendant Russo.

### c. Fourteenth Amendment Due Process Claims

The Court also construes Plaintiff's amended complaint to raise a Fourteenth Amendment due process claim against Defendant Russo.

"The Fourteenth Amendment protects an individual from deprivation of life, liberty or property, without due process of law." *Bazzetta v. McGinnis*, 430 F.3d 795, 801 (6th Cir. 2005). The elements of a procedural due process claim are (1) a life, liberty, or property interest requiring protection under the Due Process Clause, and (2) a deprivation of that interest (3) without adequate process. *Women's Med. Prof'l Corp. v. Baird*, 438 F.3d 595, 611 (6th Cir. 2006). "Without a protected liberty or property interest, there can be no federal procedural due process claim." *Experimental Holdings, Inc. v. Farris*, 503 F.3d 514, 519 (6th Cir. 2007) (citing *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 579 (1972)).

The United States Supreme Court long has held that the Due Process Clause does not protect every change in the conditions of confinement having an impact on a prisoner.  *See Meachum v. Fano*, 427 U.S. 215, 225 (1976).  In *Sandin v. Conner*, the Supreme Court set forth the standard for determining when a state-created right creates a federally cognizable liberty interest protected by the Due Process Clause. 515 U.S. 472, 484 (1995).  According to that Court, a prisoner is entitled to the protections of due process only when the sanction "will inevitably affect the duration of his sentence" or when a deprivation imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."  *Id.* at 486–87; *see also Jones v. Baker*, 155 F.3d 810, 812 (6th Cir. 1998); *Rimmer-Bey v. Brown*, 62 F.3d 789, 790–91 (6th Cir. 1995).  Further, in *Sandin*, the Court held that regardless of the mandatory language of the prison regulations, the inmate did not have a liberty interest because his placement in administrative segregation did not constitute an atypical and significant hardship within the context of his prison life.  *Sandin*, 515 U.S. at 484; *see also Mackey v. Dyke*, 111 F.3d 460, 463 (6th Cir. 1997).  Without a protected liberty interest, a plaintiff cannot successfully claim that his due process rights were violated because "[p]rocess is not an end in itself."  *Olim v. Wakinekona*, 461 U.S. 238, 250 (1983).  Additionally, the Supreme Court has repeatedly held that a prisoner has no constitutional right to be held in a specific security classification.

*See id.* at 245; *Moody v. Daggett*, 429 U.S. 78, 88 n.9 (1976); *Meachum*, 427 U.S. at 228–29.

Here, Plaintiff alleges that Defendant Russo would write Plaintiff misconduct tickets at URF, and Plaintiff alleges that he has "done years of top lock at URF." (Am. Compl., ECF No. 8, PageID.111.)  Plaintiff does not provide any facts about any other sanctions that he received as a result of the misconduct tickets, and Plaintiff does not allege that his placement on toplock affected the duration of his sentence.  Although Plaintiff contends that he has "done years of top lock at URF," which may provide a suggestion of an atypical and significant hardship, Plaintiff provides no specific dates about when he was on toplock (i.e, was Plaintiff on toplock for separate periods of time that added up to years or was Plaintiff on toplock status for years at a time), and he fails to allege *facts* showing that Defendant Russo was involved in all of the times that Plaintiff was placed on toplock.  *See Iqbal*, 556 U.S. at 676 ("[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution.").  Instead, Plaintiff appears to ask the Court to fabricate plausibility to his claims from mere ambiguity; however, ambiguity does not support a claim.

Accordingly, for these reasons, Plaintiff's Fourteenth Amendment due process claims will be dismissed.

### d.    Fourteenth Amendment Equal Protection Claims

Further, the Court construes Plaintiff's amended complaint to raise a Fourteenth Amendment equal protection claim against Defendant Russo.  (*See* Am. Compl., ECF No. 8, PageID.112.)

The Equal Protection Clause of the Fourteenth Amendment provides that a state may not "deny to any person within its jurisdiction the equal protection of the laws," which is essentially a direction that all persons similarly situated should be treated alike.  U.S. Const., amend. XIV; *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985).  A state practice generally will not require strict scrutiny unless it interferes with a fundamental right or discriminates against a suspect class of individuals.  *Mass. Bd. of Ret. v. Murgia*, 427 U.S. 307, 312 (1976).  When a law adversely impacts a "suspect class" such as one defined by race, alienage, or national origin, or invades a "fundamental right," such as speech or religious freedom, the rigorous "strict scrutiny" standard ordinarily governs, whereby such laws "will be sustained only if they are suitably tailored to serve a compelling state interest."  *City of Cleburne*, 473 U.S. at 440.

To state an equal protection claim, Plaintiff must show "intentional and arbitrary discrimination" by the state; that is, he must show that he "has been intentionally treated differently from others similarly situated . . . ."  *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000).  The threshold element of an equal protection claim is disparate treatment.  *Scarbrough v. Morgan Cnty. Bd. of Educ.*, 470 F.3d 250, 260 (6th Cir. 2006).  Further, "'[s]imilarly situated' is a term of art—a comparator . . . must be similar in 'all relevant respects.'"  *Paterek v. Vill. of Armada*, 801 F.3d 630, 650 (6th Cir. 2015) (quoting *United States v. Green*, 654 F.3d 637, 651 (6th Cir. 2011)).

Here, Plaintiff alleges in a conclusory manner that Defendant Russo "would never do this to white prisoners," stating that Plaintiff "is a non-white male and never gotten in a fight in that unit . . . or gotten in any trouble besides the harassment of staff." (Am. Compl., ECF No. 8, PageID.112.)  Plaintiff's allegations are not a model of clarity, and it is not clear what "*this*" Plaintiff is referring to when he states that Defendant Russo "would never do *this*." (*Id.*)  Plaintiff could be referring to Defendant Russo's issuance of misconduct tickets to Plaintiff or Defendant Russo's verbal harassment, or both; however, regardless, although Plaintiff alleges that he was treated differently than others, he fails to allege that the other prisoners were similarly situated in all relevant respects.  Instead, his allegations of discriminatory treatment are wholly conclusory.  Conclusory allegations of unconstitutional conduct without specific factual allegations fail to state a claim under § 1983.  *See Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 555.  Furthermore, even viewing Plaintiff's equal protection claim as a class-of-one claim, the Court would reach the same conclusion because Plaintiff's equal protection claims are wholly conclusory and he has alleged no facts that plausibly suggest that his equal protection rights were violated.

Accordingly, any intended Fourteenth Amendment equal protection claims will be dismissed.

### E.    State Law Claims

Plaintiff also alleges that Defendants violated state law and the MDOC's policies and procedures.  (*See, e.g.*, Am. Compl., ECF No. 8, PageID.112, 113, 115.)  Claims under § 1983 can only be brought for "deprivations of rights secured by the Constitution and laws of the United States."  *Lugar v. Edmondson Oil Co.*, 457 U.S.

34

922, 924 (1982).  Section 1983 does not provide redress for a violation of a state law or the MDOC's policies and procedures.  *Pyles v. Raisor*, 60 F.3d 1211, 1215 (6th Cir. 1995); *Sweeton v. Brown*, 27 F.3d 1162, 1166 (6th Cir. 1994).  Plaintiff's assertions that Defendants violated state law or the MDOC's policies and procedures fail to state a claim under § 1983.

Further, in determining whether to retain supplemental jurisdiction over state law claims, "[a] district court should consider the interests of judicial economy and the avoidance of multiplicity of litigation and balance those interests against needlessly deciding state law issues." *Landefeld v. Marion Gen. Hosp., Inc.*, 994 F.2d 1178, 1182 (6th Cir. 1993).  Dismissal, however, remains "purely discretionary." *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009) (citing 28 U.S.C. § 1367(c)).  Here, all of Plaintiff's federal claims will be dismissed, and the balance of the relevant considerations weighs against the continued exercise of supplemental jurisdiction.   Therefore, Plaintiff's state law claims will be dismissed without prejudice.

## Conclusion

Having conducted the review required by the PLRA, the Court determines that Plaintiff's federal claims will be dismissed for failure to state a claim under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).  Plaintiff's state law claims will be dismissed without prejudice because the Court declines to exercise supplemental jurisdiction over such claims.  The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3).  *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997).  For the same reasons

the Court concludes that Plaintiff's claims are properly dismissed, the Court also concludes that any issue Plaintiff might raise on appeal would be frivolous.  *Coppedge v. United States*, 369 U.S. 438, 445 (1962).  Accordingly, the Court certifies that an appeal would not be taken in good faith.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A judgment consistent with this opinion will be entered.


Dated:  May 22, 2024                        /s/ Phillip J. Green
                                            PHILLIP J. GREEN
                                            United States Magistrate Judge